UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FELIX TOMAS CRUZ, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:23-cv-10344-IT |
| | * | |
| GEORGE A. BILLEADEAU, et al., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER

October 14, 2026

TALWANI, D.J.

In this action Plaintiff Felix Tomas Cruz ("Cruz") asserts that six Massachusetts state corrections officers violated his right to be free from cruel and unusual punishment under the Eighth Amendment on February 8, 2020, when certain Defendants used excessive force to restrain him and other Defendants failed to intervene. Pending before the court is Defendants' Motion for Summary Judgment [Doc. No. 85], arguing that Cruz's Eighth Amendment claims fail as a matter of law. As stated below, the court finds the summary judgment record replete with disputed material facts and therefore DENIES Defendants' Motion for Summary Judgment [Doc. No. 85].

## I. Background

On February 8, 2020, while incarcerated at the Old Colony Correctional Center, in Bridgewater, Massachusetts, Cruz was restrained and injured by Corrections Officers ("COs"). Defs.' SUMF ¶¶ 1, 8 [Doc. No. 87]. As relevant here, Defendant COs DeAngelo, Nye, and Bonito arrived at Cruz's cell before or around 7:00 p.m. for evening rounds. Id. ¶ 43. Having been previously informed that the cell contained a homebrew alcoholic beverage, the COs

ordered Cruz to leave the cell to effectuate a search. Id. ¶¶ 42–43. Cruz complied with the order. Id. ¶ 43. The COs identified and apprehended the contraband alcohol and were securing the cell when Cruz's cellmate arrived on scene. Id. ¶¶ 46–49. Cruz's cellmate argued with the COs and both Cruz and his cellmate were ordered to exit the area under escort. Id. ¶¶ 49–50. The COs called for backup, seeking assistance with escorting both Cruz and his cellmate and with securing the general area from other inmates observing the incident. Id. ¶¶ 59, 68.

As Cruz's cellmate, accompanied closely by additional COs, walked quickly out of the building, Cruz exited at a slower pace, roughly fifteen meters behind his cellmate, flanked by Defendant COs Guerrero and Riquinha. Id. ¶¶ 73, 78. While approaching the exit, Cruz's cellmate became physically combative with his CO-escorts. Id. ¶¶ 76–77. When the COs flanking Cruz observed the cellmate become combative, they grabbed Cruz's arms to restrain him. Id. ¶¶ 78, 80. Cruz resisted, attempting to twist out of their grip. Id. ¶ 78. Defendant CO Needel joined the effort to restrain Cruz, with the parties struggling on the floor. Id. ¶¶ 78, 80, 84. Defendants assert that Cruz grabbed Riquinha's shirt in an effort to bring the CO down to the ground. Id. ¶ 85. Cruz denies this. Defs.' SUMF Ex. C, at 35:11–16; 156:12–16 [Doc. No. 87-3] ("Cruz Depo. Tr."). Both DeAngelo and Billadeau deployed pepper spray to Cruz's face. Defs.' SUMF ¶¶ 89, 96 [Doc. No. 87]. During the struggle, Riquinha punched Cruz's face and also laced his fingers behind Cruz's neck, pulled Cruz's head onto his knee, and struck Cruz's face multiple times with so much force that Riquinha broke his kneecap. Defs.' SUMF ¶ 98 [Doc. No. 87]; Defs.' SUMF Ex. BB, at 111:21–23, 210:17–211:14, 212:16–18 [Doc. No. 87-28] (Riquinha Depo. Tr.). Defendants placed Cruz in handcuffs and leg restraints and escorted him to a neighboring unit of the prison for confinement. Pl.'s SUMF ¶¶ 59–60, 70 [Doc. No. 98].

Prior to entering the cell in the new unit, Defendant COs Needel and Guerrero, and CO Moore[1] conducted a pat search of Cruz. Defs.' SUMF ¶¶ 142–143 [Doc. No. 87]. Cruz asserts that he was ordered to lift his foot during the pat search. Cruz Depo. Tr. 52:11–17 [Doc. No. 87-3]. Defendants assert that Cruz kicked the searching CO, Moore. Defs.' SUMF Ex. JJ, at 38:4–39:18 [Doc. No. 87-36] (Moore Depo. Tr.). The parties agree that Needel and Guerrero brought Cruz to the floor and then escorted Cruz into the cell. Defs.' SUMF ¶¶ 149, 154 [Doc. No. 87]. Once inside the cell, Cruz asserts that Needel and Guerrero, as well as a third unidentified officer, kicked and punched Cruz while he was lying on the cell floor in the fetal position. Pl.'s SUMF ¶¶ 99–100 [Doc. No. 98]. Cruz further asserts that Needel tightened his "right handcuff to the point where Cruz heard his wrist crack and break." Id. ¶ 101.

As a result of the uses of force on February 8, 2020, Cruz suffered lacerations, an abrasion on his forehead, a bloody nose, injuries to his arms, neck strain, and a broken wrist. Id. ¶¶ 69, 127, 246.

**II. Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers Ins. Co., 670 F.3d 119, 125 (1st Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

[1] Cruz named CO Moore as a Defendant in the Amended Complaint [Doc. No. 61], but all claims against Moore have been dismissed. See Elec. Order [Doc. No. 73].

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be satisfied in two ways: (1) by submitting affirmative evidence that negates an essential element of the non-moving party's claim or (2) by demonstrating that the non-moving party failed to establish an essential element of its claim. Id. at 331 (Brennan, J., dissenting). Once the moving party establishes the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to set forth facts demonstrating that a genuine dispute of material fact remains. Id. at 322. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] upon mere allegations or denials of [the] pleading[s]." Anderson, 477 U.S. at 256. Rather, the non-moving party must "go beyond the pleadings and by [his or] her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quotations omitted). Disputes over facts "that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

Where the record includes "a videotape capturing the events in question," the court should "view[ ] the facts in the light depicted by the videotape." Scott v. Harris, 550 U.S. 372, 378, 381 (2007). And if "opposing parties tell two different stories, one of which is blatantly contradicted" by the video "so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]" Id. at 380.

**III. Discussion**

Defendants seek summary judgment on Cruz's excessive force and failure-to-intervene claims under the doctrine of qualified immunity.[2] Mem. ISO Mot. for Summ. J. 24 [Doc. No. 86] ("Defs.' Mem."). They argue that Cruz has failed to provide evidence of a constitutional violation and that, even if he has, the unlawfulness of Defendants' actions was not clearly established. Id. at 25.

A. *Section 1983 Claims*

Cruz brings claims under 42 U.S.C. § 1983 for violations of his Eighth Amendment rights based on Defendants' alleged use of and failure to intervene in the exertion of excessive force on February 8, 2020. See Am. Compl. ECF 5–7, 9–10 [Doc. No. 61].

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393–94 (1989) (internal quotations and citations omitted). The statute "supplies a private right of action against a person who, under color of state law, deprives another of 'any rights, privileges, or immunities secured by the Constitution and [federal] laws.'" Gray v. Cummings, 917 F.3d 1, 7–8 (1st Cir. 2019) (alteration in original) (quoting 42 U.S.C. § 1983). To maintain a cause of action

[2] As a threshold issue, Defendants argue that Cruz has failed to satisfy the Prisoner Litigation Reform Act's administrative exhaustion requirement, see 42 U.S.C. § 1997e(a), because, in his initial grievance, Cruz did not include allegations that he was punched and kicked inside the new unit cell and he did not specifically name the COs who allegedly failed to intervene. Defs.' Mem. 3–4 [Doc. No. 86]. However, Cruz has exhausted his administrative remedies where he timely filed a grievance regarding excessive force used by COs on February 8, 2020, and then appealed the grievance as required by Massachusetts regulation. 103 Mass. Code Regs. 491.09; see Jones v. Bock, 549 U.S. 199, 204 (2007). Defendants do not dispute the timeliness of the appeal. Cruz's grievance, Defs.' SUMF Ex. CCC [Doc. No. 87-55], properly contained a "brief" statement of facts regarding his claims. 103 Mass Code Regs. 491.14(2)(d). And Cruz's grievance put the Massachusetts Department of Corrections ("MDOC") sufficiently on notice such that MDOC was able to commence an investigation, regardless of how many officers Cruz specifically identified by name. See Mallory v. Marshall, 659 F. Supp. 2d 231, 238 (D. Mass. 2009).

under § 1983, a plaintiff must show that "the challenged conduct [is] attributable to a person acting under color of state law" and that "the conduct . . . worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997) (citation omitted), cert. denied, 522 U.S. 819.

1. Excessive Force

Cruz claims that Riquinha, DeAngelo, and Billadeau violated his Eighth Amendment rights by utilizing, *inter alia*, knee strikes and pepper spray to initially restrain Cruz. Am. Compl. ECF 2, 5–6, 9 [Doc. No. 61]. Cruz further claims that Guerrero and Needel violated his Eighth Amendment rights by assaulting him both outside and inside of the new unit cell, and, as to Needel alone, breaking Cruz's wrist. Id. at ECF 3, 7, 9; Pl.'s Opp'n 12 [Doc. No. 101].

The Eighth Amendment protects against "cruel and unusual punishments," including "unnecessary and wanton infliction of pain" during incarceration. U.S. CONST. amend. VIII; Whitley v. Albers, 475 U.S. 312, 319 (1986) (citation omitted). An Eighth Amendment claim for excessive force has two components. First, the plaintiff must show that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Staples v. Gerry, 923 F.3d 7, 13 (1st Cir. 2019) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Second, the plaintiff must show that the force "was applied . . . maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." Whitley, 475 U.S. at 320–21.

As to the objective prong, while "de minimis uses of physical force" cannot constitute Eighth Amendment violations, see Hudson, 503 U.S. at 9–10, "there is no requirement of 'serious injury,'" Mullen v. Dep't of Corr., 643 F. Supp. 3d 238, 247 (D. Mass. 2022) (quoting Bastien v. Goddard, 279 F.3d 10, 14–16 (1st Cir. 2002)). Defendants punched, kicked, and kneed

Cruz in the face, deployed chemical agents, and broke his wrist. Defs.' SUMF ¶¶ 78–98 [Doc. No. 87]; Pl.'s SUMF ¶¶ 99–101 [Doc. No. 98]. A jury could reasonably assess Defendants' conduct as "objectively harmful enough to establish a constitutional violation." Staples, 923 F.3d at 13 (internal quotations and citation omitted); see Carter v. Symmes, No. 06-10273-PBS, 2008 WL 341640, at *5 (D. Mass. Feb. 4, 2008) (holding that a single shove rose beyond de minimis use of force because prison official knew incarcerated person was "severely injured in his hip and knee").

With respect to the subjective prong, "[t]he critical question . . . is whether the force was applied maliciously and sadistically for the very purpose of causing harm, rather than in a good-faith effort to maintain or restore discipline." Skinner v. Cunningham, 430 F.3d 483, 488 (1st Cir. 2005) (internal quotations and citations omitted). Courts consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (internal quotations and citations omitted). The severity of the plaintiff's injuries may inform whether the officer's conduct was malicious and sadistic. See Wilkins v. Gaddy, 559 U.S. 34, 38–39 (2010).

Whether Defendants used force reasonably throughout the February 8, 2020 incident presents questions for the jury. First, the appropriateness of Riquinha's knee strikes to restrain Cruz is disputed where (1) Riquinha used so much force he broke his own kneecap, Pl.'s SUMF ¶ 56 [Doc. No. 98]; (2) Cruz denies pulling on Riquinha's shirt, the alleged trigger for the use of force,[3] Cruz Depo. Tr. 35:11–16; 156:12–16 [Doc. No. 87-3]; (3) MDOC's use of force policy

---

[3] The court has reviewed the surveillance footage video as requested by Defendants, see Defs.' Reply 10 n.8 [Doc. No. 104], but does not find that footage dispositive due to the video's poor

excludes reference to the knee strike tactic, Pl.'s SUMF Ex. 30 [Doc. No. 98-30] (MDOC Policy); and (4) many of Riquinha's Co-Defendants testified during deposition that they were never trained to execute the maneuver Riquinha performed, i.e. pulling Cruz's head onto his striking knee, Defs.' SUMF Ex. AA, at 31:3–6 [Doc. No. 87-27] (DeAngelo Depo. Tr.); Defs.' SUMF Ex. DD, at 8:19–9:16 [Doc. No. 87-30] ("Nye Depo. Tr."); Defs.' SUMF Ex. EE, at 15:22–16:2 [Doc. No. 87-31] (Needel Depo. Tr.). On this record, a jury could reasonably find that Riquinha applied force disproportionately to any threat Cruz may have posed to Defendants despite Cruz's resistance to the initial restraint. Cf. Orwat v. Maloney, 360 F. Supp. 2d 146, 154 (D. Mass. 2005) (noting that plaintiff's "gesture and words, though concededly belligerent, were not [sufficiently] threatening" to justify defendant striking plaintiff in face).

As to DeAngelo and Billadeau's deployment of the pepper spray, a reasonable jury could find that Cruz did not present a sufficient threat to justify two uses of the chemical agent where multiple COs were restraining Cruz and whether Cruz was assaultive is disputed. See Iko v. Shreve, 535 F.3d 225, 240 (4th Cir. 2008) (concluding that pain was wantonly inflicted by deploying excessive amount of pepper spray). Additionally, a reasonable jury could find that it was excessive for Needel and Guerrero to slam Cruz the floor outside of the new unit cell while he was being pat searched, given that Cruz denies that he kicked the CO searching him and asserts that such a kick would be unlikely because of his leg restraints. Cruz Depo. Tr. 164:8–14 [Doc. No. 87-3]. Finally, a reasonable jury could find that, after confining Cruz in the cell, it was unnecessary for an officer to tighten Cruz's right handcuff such that Cruz's wrist broke. Id. at 168:12–169:1. In sum, where the court has identified numerous material factual disputes and is

---

quality. Defs.' SUMF Ex. HH, Disc 1 – OU Back View [Doc. No. 87-34]; contra Scott, 550 U.S. at 380–81.

unable to resolve them based on the present record, such issues must be addressed by a jury. See Mullen v. Dep't of Corr. of Mass., 800 F. Supp. 3d 250, 262–65 (D. Mass. 2025).

2. Failure to Intervene

Cruz claims that Nye failed to intervene to prevent other Defendants from using excessive force. Am. Compl. ECF 2, 9–10 [Doc. No. 61]; Pl.'s Opp'n 12–13 [Doc. No. 101]. "Under the Eighth Amendment, [a]n officer may be held liable not only for his personal use of excessive force, but also for his failure to intervene in appropriate circumstances to protect an arrestee from the excessive use of force by his fellow officers." Larocque v. Mici, No. 23-cv-13252-ADB, 2025 WL 848561, at *7 (D. Mass. March 18, 2025) (alteration in original) (quotations omitted); see Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002). To prevail on this claim, Cruz must show that a defendant was "[(1)] present when excessive force was used; [(2)] observed the use of excessive force; [(3)] was in a position where he or she could realistically prevent that force; and [(4)] had sufficient time to do so." Davis v. Rennie, 264 F.3d 86, 102 (1st Cir. 2001), cert. denied, 535 U.S. 1053 (2002).

Based on the surveillance camera footage and record evidence, Defendant Nye was present during the initial restraint and observed the use of force, including Riquinha's knee strikes. Defs.' SUMF Ex. HH, Disc 1 – OU Back View [Doc. No. 87-34]; Pl.'s SUMF Ex. 7 [Doc. No. 98-7] (Nye Disciplinary Report). If a reasonable jury were to find that use of force to be excessive, the jury could also find that Nye failed to intervene and stop Riquinha from continuing to punch and knee Cruz in the face. See Mullen, 800 F. Supp. 3d at 265–66. Given Nye's physical proximity to the incident and supervisory role, such a jury finding could be reasonable. Nye Depo. Tr. 10:15–21 [Doc. No. 87-30].

B. *Qualified Immunity*

Alternatively, Defendants argue they are entitled to qualified immunity. Qualified immunity protects government officials from being sued in their individual capacities for damages unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" Irish v. Fowler, 979 F.3d 65, 76 (1st Cir. 2020) (quoting Dist. of Columbia v. Wesby, 583 U.S. 48, 62–63 (2018)), cert. denied, 142 S. Ct. 74 (2021).

As to the first requirement, as explained above, a jury could reasonably find that Defendants violated Cruz's Eighth Amendment rights. Regarding the second, the court considers "whether under the plaintiff's version of the facts[,] a reasonable officer should have known that the degree of force used was plainly excessive." Morelli v. Webster, 552 F.3d 12, 25 (1st Cir. 2009) (citation omitted). On February 8, 2020, Defendants should have known that force applied not "in a good-faith effort to maintain or restore discipline" violates the Eighth Amendment. Hudson, 503 U.S. at 6 (citation omitted); see Mullen, 643 F. Supp. 3d at 249–50; see, e.g., Abrams v. Waters, No. 17-cv-1659, 2018 WL 691717, at *7 (D. Conn. Feb. 2, 2018) (finding that a corrections officer responding to a fight violated the Eighth Amendment when, after the fight had ended, he slammed an incarcerated person onto the floor).

Whether Defendants reasonably perceived Cruz as threatening during the initial restraint and outside/inside the new unit cell, whether Cruz endangered Defendants' safety, and whether Defendants' conduct was excessive are factual questions for the jury to resolve. See 103 Mass. Code Regs. 505.07 (establishing that "objectively reasonable is the review standard applied to each use of force[,]" and outlining various relevant factors to determine "reasonableness");

Whitley, 475 U.S. at 320–21. Accordingly, in light of these material factual disputes, Defendants are not entitled to qualified immunity on summary judgment.

## IV. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment [Doc. No. 85] is DENIED.

IT IS SO ORDERED.

October 14, 2026

/s/ Indira Talwani
United States District Judge